Michael F. Ram, Esq. (SBN 104805)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Email: mram@forthepeople.com

Patrick A. Barthle II (Pro hac vice)
Florida Bar No. 99286
pbarthle@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Ryan D. Maxey (Pro hac vice)
**MAXEY LAW FIRM, P.A.**
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
ryan@maxeyfirm.com

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Dr., PH Suite
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: jnelson@milberg.com

*Attorneys for Plaintiffs and the Proposed Class*

**THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

PAUL GOIS, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

KISCO SENIOR LIVING, LLC,

Defendant.

---

RONALD COX, on behalf of himself and all others similarly situated,

Case No. 24-cv-751-BJC-AHG

**REPRESENTATIVE PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS**

Plaintiff,

v.

KISCO SENIOR LIVING, LLC,

Defendant.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Following hard-fought settlement negotiations, the Parties[1] reached a settlement to resolve claims arising from a Data Incident Kisco announced in April 2024. The settlement creates a non-reversionary common fund of $1,800,000.00 for the benefit of approximately 26,663 class members (or **$67.50** per class member),[2] including, subject to Court approval, (1) Approved Claims for Credit Monitoring Services; (2) Approved Claims for Ordinary Out-of-Pocket Losses; (3) Approved Claims for Extraordinary Out-of-Pocket Losses and Attested Time; (4) Approved Claims for California Statutory Payments; and (5) Residual Cash Payments. Subject to Court approval, the Settlement Fund will also pay for a notice and administration program, service awards to RPs, and attorneys' fees and expenses.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case and resolving the risk and uncertainty of

---

[1] The parties to the settlement are Paul Gois, Gayle Gois, Ronald Cox, and Matthew Taylor, the Representative Plaintiffs ("RPs"), on behalf of the proposed Settlement Class, and Defendant Kisco Senior Living, LLC ("Kisco"). Capitalized terms used in this Brief have the same meaning as in the Settlement Agreement ("S.A."), attached hereto as Exhibit 1.

[2] As explained further below, this figure far exceeds what is typically obtained in data breach cases.

continued litigation. The settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). RPs thus move for an order preliminarily approving the settlement, directing notice to the Class, and scheduling a Final Approval Hearing. In support of their motion, RPs submit the Settlement Agreement ("Settlement Agreement") (Ex. 1 hereto), which includes a proposed order preliminarily approving the settlement and directing notice (Ex. D to the Settlement Agreement); the declaration of proposed co-Class Counsel Ryan D. Maxey ("Maxey Decl.") (Ex. 2 hereto); and the declaration of Carole Thompson behalf of the proposed Claims Administrator (CPT Group, Inc. ("CPT")), detailing the Notice Plan ("Thompson Decl.") (Ex. 3 hereto).

## FACTUAL BACKGROUND

### A. Overview of the Litigation

On or around February 23, 2024, Kisco experienced the Data Incident. After Kisco provided notice of the Data Incident on or about April 17, 2024, RPs Paul Gois and Gayle Gois filed a putative Class Action Complaint on April 26, 2024, in the United States District Court for the Southern District of California, bringing claims for negligence and breach of implied contract. Plaintiff Cox filed a second case on May 13, 2024, which was consolidated into the *Gois* case. On June 21, 2024, RPs filed a consolidated complaint, bringing claims for negligence, breach of implied contract, unjust enrichment, violation of the California Unfair Competition Law, and violation of the California Consumer Privacy Act. Kisco denies the allegations and the claims made in the Complaint. On August 6, 2025, RPs filed a Consolidated Complaint (ECF No. 35) ("Complaint"), the operative complaint in this action.

After significant discovery efforts, motion practice, and two formal mediations, the parties reached an agreement in principle on a $1,800,000.00

Settlement Fund, the terms of which were later finalized in this Settlement Agreement and the attached exhibits.

**B. The Terms of the Proposed Settlement**

**The Settlement Class**

The proposed Settlement Class is defined as: all individual U.S. residents to whom Kisco sent written notification of the Data Incident. S.A. ¶ 1.27.[3] Kisco represents that the Settlement Class contains approximately 26,663 individuals. *Id.*

**The Settlement Fund**

Kisco will pay $1,800,000.00 into a Settlement Fund for class benefits, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses award by the Court. *Id.* ¶ 2.1. Specifically, within forty-five (45) days of preliminary settlement approval or receipt of an invoice, Form W-9, and payment instructions from the Claims Administrator, whichever is later, Defendant will cause to be deposited into the Settlement Fund the anticipated Costs of Claims Administration. *Id.* Defendant will cause to be deposited into the same account the awarded attorney's fees, costs, and service awards within five (5) days of the Effective Date. *Id.* Defendant will cause to be deposited into the same account the balance of the Settlement Fund within forty-five (45) days of the Effective Date.

---

[3] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Incident or who pleads nolo contendere to any such charge. Several officers of Kisco were sent written notification of the Data Incident but are specifically excluded from the Settlement Class. *Id*.

*Id.* The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement, and include:

- **Credit Monitoring Services.** The Settlement Fund will be used to provide three years of three bureau credit monitoring ("Credit Monitoring Services"). Settlement Class Members must file a claim form that selects credit monitoring in order to obtain Credit Monitoring Services.

- **Ordinary Out-of-Pocket Losses.** All Settlement Class members may submit a claim for Ordinary Out-of-Pocket Losses of up to $1,000 per individual. S.A. ¶ 2.3. "Ordinary" Out-of-Pocket Losses are unreimbursed costs or expenditures incurred by a Class member in responding to notice of the Data Incident that were incurred between June 1, 2023 (or the earliest verifiable date the Data Incident occurred) and the Claims Deadline, as result of the Data Incident. *Id.* ¶ 2.3.1.

- **Extraordinary Losses and Attested Time.** In addition to submitting a claim for Ordinary Out-of-Pocket Losses, Settlement Class Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Out-of-Pocket Losses up to $10,000 per individual. S.A. ¶ 2.4. "Extraordinary Losses" are actual, documented, and unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class member's personal information. *Id.* ¶ 2.4.1. The loss must have occurred between June 1, 2023 (or the earliest verifiable date the data breach occurred) and the Claims Deadline. *Id.* The Settlement Class Member must have made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.* In addition, and whether or not they incurred Extraordinary Out-of-Pocket Losses, Settlement Class Members may also submit a claim for up to 5 hours of time spent remedying issues related to the Data Incident at a rate of $30 per hour, but only if at least 1 full hour was spent. ("Attested Time"). *Id.* ¶ 2.4.3.

- **<u>California Statutory Payments.</u>** In addition to any other relief under this Settlement Agreement, Settlement Class Members who resided in California at any time during the Data Incident (June 1, 2023 to June 6, 2023) may claim $250.00 in compensation for releasing their claims under the California Consumer Privacy Act.

- **<u>Residual Cash Payment.</u>** If there are funds remaining in the Settlement Fund after payment of Approved Claims for Credit Monitoring Services, Approved Claims for Ordinary Out-of-Pocket Losses, Approved Claims for Extraordinary Out-of-Pocket Losses and Attested Time, Approved Claims for California Statutory Payments, costs of notice and administration, service awards approved by the Court, and attorney's fees and expenses approved by the Court ("the Remainder"), the Remainder will be paid pro rata to each Settlement Class Member who timely submitted an approved claim, whether for a Residual Cash Payment or any other benefit available under the Settlement. *Id.* ¶ 2.7. The amount of the Residual Cash Payments will be calculated by dividing the Remainder by the number of Settlement Class Members who timely submitted an approved claim. *Id.*

Settlement Class Members seeking any of these benefits must complete and submit either a written or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. *Id*. ¶ 2.9.2. For Claims for Ordinary Out-of-Pocket Losses and Claims for Extraordinary Losses and Attested Time, the claimant must provide documentation supporting their claim (*id*. ¶¶ 2.3.2, 2.4.2).

If the aggregate amount of Approved Claims for Ordinary Out-of-Pocket Losses, Approved Claims for Extraordinary Out-of-Pocket Losses and Attested Time, and Approved Claims for California Statutory Payments exceeds the remaining amount of the Settlement Fund after payment of Approved Claims for Credit Monitoring Services, notice and administration costs, service awards approved by the Court, and attorneys' fees and expenses approved by the Court,

Approved Claims for Ordinary Out-of-Pocket Losses, Approved Claims for Extraordinary Out-of-Pocket Losses and Attested Time, and Approved Claims for California Statutory Payments will be decreased pro rata to consume the remaining amount of the Settlement Fund. *Id.* ¶ 2.7.

**Proposed Notice and Claims Program**

Proposed Class Counsel have retained, and request that the Court appoint, CPT Group, Inc. as the Claims Administrator to provide notice to Settlement Class Members and to process claims. CPT will send a Short Form Notice with an attached "tear off" claim form with prepaid postage via U.S. mail to all Settlement Class Members for whom a valid mailing address is provided. Prior to mailing, to increase the success rate of deliverability, CPT will scrub the records to reduce anomalies and duplicates and update the mailing addresses using National Change of Address (NCOA). Any mailed notices that are returned as undeliverable from the post office will be promptly re-mailed if returned with a forwarding address or skip traced in attempt to find the current addresses and promptly re-mailed if ascertained. Thompson Decl. ¶ 11. Moreover, the Long Form Notice will be posted on the Settlement Website, along with other important documents such as the Settlement Agreement, and a toll-free help line will be available to answer Settlement Class Members' questions. *Id.* ¶¶ 12-13. In proposed Class Counsel's experience, the reach of the Notice Plan meets that of other court-approved notice programs, and has been designed to meet due process requirements, including the "desire to actually inform" requirement. The Notice Plan is thus the best notice practicable under the circumstance of this case.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to submit claims electronically on the Settlement Website or by mail. CPT, the proposed Claims Administrator, is a

widely-regarded expert with the experience and capability to handle a case of this magnitude. *See generally* Thompson Decl.

**Attorneys' Fees and Expenses and Service Awards**

Proposed Class Counsel may request an award of attorney's fees of up to one third of the Settlement Fund, or $600,000.00, to be paid exclusively from the Settlement Fund. S.A. ¶ 7.2. Kisco reserves its right to contest any such request. *Id.*

Proposed Class Counsel may request an award of costs and expenses up to $50,000.00 to be paid exclusively from the Settlement Fund. *Id.* Kisco reserves its right to contest any such request. *Id.*

Proposed Class Counsel may also request a service award of up to $5,000.00 for each of RPs to be paid from the Settlement Fund. *Id*. ¶ 7.3. Kisco reserves its right to contest any such request. *Id.*

**Releases**

The Settlement Class will release Kisco from claims that were or could have been asserted in this case. The releases are detailed in the Settlement Agreement and are tailored to the claims at issue in the litigation. *Id*. ¶¶ 1.22, 1.23, 6.1.

## ARGUMENT

In *In re Solara Med. Supplies Data Breach Litig.*, No. 3:19-CV-02284-H-KSC, 2022 WL 1174102 (S.D. Cal. Apr. 20, 2022), another "cyberattack" case, Judge Huff thoroughly laid out the criteria for approving a class action settlement in the data privacy context before analyzing those criteria and ultimately granting preliminary approval of a class action settlement. RPs rely on Judge Huff's Order throughout this motion as it offers guidance particularly useful in the data privacy context, including as follows:

> When "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify

> both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The district court must first "assess whether a class exists," and second, determine whether the "proposed settlement is fundamentally fair, adequate, and reasonable." *Id.*

*Id.* at *3 (citations omitted).

**A. Whether a Class Exists.**

**1. Class Certification.**

"A plaintiff seeking to certify a class under Rule 23(b)(3) must first satisfy the requirements of Rule 23(a)." *Id.* (citing Fed. R. Civ. P. 23(b); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)). "Once subsection (a) is satisfied, the purported class must the fulfill the requirements of Rule 23(b)(3)." *Id.* (citing Fed. R. Civ. P. 23(b)).

**i. Rule 23(a) Requirement.**

**1. Numerosity.**

"The numerosity prerequisite is met if 'the class is so numerous that joinder of all members is impracticable.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(1)). "'In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.'" *Id.* (quoting *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). The proposed class includes approximately 26,663 individuals. S.A. ¶ 1.27. Joinder of this many class members would be impracticable.

**2. Commonality.**

"The commonality prerequisite is met if there are 'questions of law or fact common to the class.'" *In re Solara*, No. 2022 WL 1174102, at *4 (quoting Fed. R. Civ. P. 23(a)(2)). "'"[T]he key inquiry is not whether the plaintiffs have raised

common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" *Id.* (quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)). Common to all class members is whether Kisco's data security adequately protected their personal information and whether RPs and Class Members are entitled to damages, injunctive relief, or other equitable relief and the measure of such. *See generally* Complaint. Commonality is satisfied because this issue is capable of class-wide resolution.[4]

**3. Typicality.**

Typicality requires that 'the claims or defense of the representative parties [be] typical of the claims or defenses of the class.'" *In re Solara*, No. 2022 WL 1174102, at *4 (quoting Fed. R. Civ. P. 23(a)(3)). "A plaintiff's claims are 'typical if they are reasonably co-extensive with those of absent class members.'" *Id.* (quoting *Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th Cir. 2020)). "Typicality requires that a representative plaintiff 'possess the same interest and suffer the same injury as the class members.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). RPs' claims arise from the same Data Incident that impacted other class members and they experienced the same injuries and seek

[4] *See Peterson v. Vivendi Ticketing US LLC,* No. CV 23-7498-MWF (DFMX), 2024 WL 3915154, at *7 (C.D. Cal. June 20, 2024) ("That [commonality] requirement is met here, as each Class Member seek resolution of the same legal and factual issues, such as (1) whether Defendant's data security systems prior to and during the Data Security Incident complied with applicable federal and state laws and regulations; (2) whether Defendant was negligent in failing to properly secure and protect Plaintiffs' and the Class's PII; (3) whether Defendant was unjustly enriched by its actions; and (4) whether Plaintiffs and the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief. (See Consolidated Complaint ¶ 152). The commonality requirement is therefore satisfied.").

the same relief. *See* Complaint ¶¶ 1-19. Typicality is satisfied because resolving RPs' claims would also resolve the class members' claims.[5]

**4. Adequacy of representation.**

"The adequacy of representation prerequisite requires that the class representative be able to 'fairly and adequately protect the interests of the class.'" *In re Solara*, No. 2022 WL 1174102, at *4 (quoting Fed. R. Civ. P. 23(a)(4)). "Representation is adequate if the plaintiff and class counsel (1) do not have any conflicts of interest with any other class members and (2) will prosecute the action vigorously on behalf of the class." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). RPs' and class members' claims arise from the impact to their PII as a result of the Data Incident. RPs actively participated in the case by assisting with the initial and amended complaints, approving the Settlement, and actively participating in discovery, including by preparing to sit for depositions. Maxey Decl. ¶ 27. The proposed service awards do not misalign their interests with those of other class members. And proposed Class Counsel have capably litigated this action thus far. These factors satisfy the adequacy requirement.[6]

[5] *See Peterson*, 2024 WL 3915154, at *7 ("Here, Plaintiffs allege that their PII was compromised and that they were impacted by the same allegedly inadequate data security that harmed the rest of the Settlement Class. (Motion at 9). Accordingly, the typicality requirement is satisfied.").

[6] *See Peterson*, 2024 WL 3915154, at *8 ("As to the first prong, the Court perceives no obvious conflicts between Plaintiffs and their counsel and the other Class Members. Plaintiffs are not subject to any unique defenses, have experienced the same injuries as the other Class Members, and seek compensation from Defendant. (Motion at 9–10). As to the second prong, as already discussed, Plaintiffs and Class Counsel have vigorously prosecuted this action, Class Counsel have substantial experience litigating similar types of class actions, and there is no reason to believe that Plaintiffs and Class Counsel would not vigorously pursue this action on behalf of the Settlement Class. The adequacy requirement is satisfied.").

**ii. Rule 23(b)(3).**

"Rule 23(b)(3) requires a court to find that: (1) 'the questions of law or fact common to class members predominate over any questions affecting only individual members' and (2) 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re Solara*, No. 2022 WL 1174102, at *4 (quoting Fed. R. Civ. P. 23(b)(3)). "These factors are referred to as the 'predominance' and 'superiority' tests." *Id.* (quoting *Hanlon*, 150 F.3d at 1022-23). "Rule 23(b)(3)'s requirements are designed 'to cover cases in which a class action would achieve economies of time, effort, and expenses, and promote...uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). "If the parties seek to certify a class for settlement purposes, 'a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial.'" *Id.* (quoting *Amchem Prods.*, 521 U.S. at 620).

**1. Predominance.**

"The predominance inquiry tests whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1022). "This analysis requires more than proof of common issues of law and fact." *Id.* (quoting *Hanlon*, 150 F.3d at 1022). "Rather, the common questions should 'present a significant aspect of the case and...be resolved for all members of the class in a single adjudication.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1022). RPs alleges that Kisco acted uniformly as to RPs and other class members, resulting in the theft of their personal information. *See* Complaint ¶¶ 1-19. This satisfies the

predominance requirement.[7]

**2. Superiority.**

"The superiority inquiry requires determination of 'whether objectives of the particular class action procedure will be achieved in the particular case.'" *In re Solara*, No. 2022 WL 1174102, at *4 (quoting *Hanlon*, 150 F.3d at 1023). "The class action method is considered to be superior if 'classwide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Id.* (quoting *Valentino v. Carter-Wallce, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "The class action method has become a common method of adjudicating claims arising out of data breaches." *Id.* (citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, *8 (N.D. Cal. July 22, 2020)). It would be impractical for 26,663 individuals to bring separate lawsuits against Kisco with claims arising from the Data Incident. Because a class action is the better method for RPs and other class members to vindicate their rights, the superiority requirement is satisfied.[8]

---

[7] *See Peterson*, 2024 WL 3915154, at *8 ("Here, Plaintiffs' claims depend on the common question of whether Defendant used reasonable data security measures to protect consumers' PII. (Motion at 10–11). A common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof. Since the question here can be resolved using the same evidence for all Class Members, a single adjudication is appropriate and thus, the predominance requirement is satisfied.") (citations omitted).

[8] *See Peterson*, 2024 WL 3915154, at *8 ("Under the first factor, individual Class Members do not have a strong interest in prosecuting their individual claims. Each Class Member's damages or financial detriment is relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant. Thus, a class action is a more efficient means for each individual Member to pursue his or her claims. Moreover, because the claims of all putative Class Members are virtually identical, individual suits would require duplicative efforts. With respect to the second factor, there does not appear to be any other

### iii. Appointment of Class Counsel and Class Representative.

"Under Rule 23(g), a court that certifies a class must appoint class counsel." *Id.* (citing Fed. R. Civ. P. 23(g)(1)). "A court must consider the following factors when appointing class counsel: '(i) the work counsel has done in identifying or investigating potential clams in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsels' knowledge of the applicable law; and (iv) the resources that counsel will commit to represent the class.'" *Id.* (quoting Fed. R. Civ. P. 23(g)(1)(A)). "The court may also 'consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(g)(1)(B)).

#### a. The work Proposed Class Counsel has done in identifying or investigating potential claims in the action.

Proposed Class Counsel undertook significant investigation of the surrounding facts before negotiating the proposed settlement. First, prior to filing the complaint, Proposed Class Counsel investigated whether there were any reports that the data at issue was published on the dark web. Maxey Decl. ¶ 20. As a result of this investigation, the complaint alleges that (1) "[o]n or around June 16, 2023, reports began surfacing on the Internet that Defendant had been the subject of a ransomware attack by the Blackbyte ransomware group," (2) "[o]n or around June

---

litigation currently or previously pending by any Class Member concerning similar claims to those at issue in this action. Finally, as to the third factor, it is desirable to concentrate litigation before this Court. Defendant's principal place of business is in California, which supports litigation in this forum. Considering the presence of Defendant in California and the inclusion of a California sub-class, this Court is a proper forum for resolution of the action.") (citations omitted).

16, 2023, the Blackbyte ransomware group posted samples of information it acquired during the Data Breach on the dark web," and (3) According to one report posted on the Internet on June 16, 2023, '[t]he BlackByte ransomware group added Kisco Senior Living to its victim list. Kisco Senior Living, a renowned provider of elderly care services in the United States of America, has allegedly fallen victim to the notorious BlackByte ransomware group,'" and (4) "[t]he hacker collective shared screenshots of the data they claimed to have exfiltrated from the Kisco Senior Living data breach on their dark web portal." Complaint ¶¶ 7-10.

Second, Proposed Class Counsel investigated whether any of the data at issue was actually published on the dark web, including retaining an expert to search the dark web for impacted data. Maxey Decl. ¶ 20. In negotiating the proposed settlement, Proposed Class Counsel leveraged reports that samples of the data had been published and other evidence that the information had been released. *Id.*

Third, through formal discovery including requests for production, interrogatories, requests for admission, and a Rule 30(b)(6) deposition, Proposed Class Counsel requested and obtained information from Kisco regarding its knowledge of the manner of the attack, its response thereto, the size of the putative class, and what the attacker did with the data. *Id.*

**b. Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action and their knowledge of the applicable law.**

Proposed Class Counsel have extensive experience in data breach and class action litigation. Maxey Decl. ¶¶ 3-17; *see, e.g.*, *Peterson*, 2024 WL 3915154, at *4 ("Class Counsel have substantial experience handling complex litigations and class actions across carious practice areas, including data breach class actions.").

**c. The resources that Proposed Class Counsel will commit**

**to represent the class.**

Proposed Class Counsel have already dedicated ample time and resources to the litigation and commit to continuing to do so. *See, e.g.*, *Peterson*, 2024 WL 3915154, at *4 ("Counsel have worked on behalf of the punitive class since the Data Security Incident was first announced, have evaluated the legal and factual disputes and therefore have dedicated ample time and resources to the litigation.").

**B. The Settlement.**

"Rule 23(e) requires the Court to determine whether a proposed settlement is 'fundamentally fair, adequate, and reasonable.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). "To make this determination, the Court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Id.* (citing *Staton*, 327 F.3d at 959).

"'In addition, the settlement may not be the product of collusion among the negotiating parties.'" *Id.* (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). "'Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). "'Signs of collusion include:

(1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a 'clear sailing provision'; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund.'" *Id.* (quoting *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, *7 (N.D. Cal. Sept. 4, 2018)).

"Given that some of these factors cannot be fully assessed until a court conducts the final approval hearing, 'a full fairness analysis is unnecessary at this stage.'" *Id.* (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted)). "Rather, at the preliminary approval stage, a court need only review the parties' proposed settlement to determine whether it is within the permissible 'range of possible judicial approval' and thus, whether the notice to the class and the scheduling of a fairness hearing is appropriate." *Id.* (quoting *Alberto*, 252 F.R.D. at 666 (citation omitted)). "Preliminary approval of a settlement and notice to the class is appropriate if '(1) the proposed settlement appears to be the product of serious, informed, and noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval.'" *Id.* (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007)).

"In determining whether a proposed settlement should be approved, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Id.* (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Additionally, the Ninth Circuit favors deference to the 'private consensual decision [settling] parties,' particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party." *Id.* (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

**1. The Settlement (i) appears to be the result of serious, informed, and non-collusive negotiations and (ii) does not appear to have any obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.**

The proposed settlement was clearly the result of serious, informed, and non-collusive negotiations. As discussed above, Proposed Class Counsel undertook significant investigation of the surrounding facts before negotiating the proposed settlement, including (i) investigating whether there were any reports that the data at issue was published on the dark web, (ii) investigating whether any of the data at issue was actually published on the dark web, including retaining an expert to search the dark web for impacted data, and (iii) through formal discovery including requests for production, interrogatories, requests for admission, and a Rule 30(b)(6) deposition, Proposed Class Counsel requested and obtained information from Kisco regarding its knowledge of the manner of the attack, its response thereto, the size of the putative class, and what the attacker did with the data. Maxey Decl. ¶ 20.

As for whether the settlement appears to have any obvious deficiencies, improperly grants preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, the result obtained here satisfies these concerns, as evidenced by the dollar amount per class member obtained relative to the amounts obtained in other cyberattack cases in the Ninth Circuit. As data breach cases go, this case was stronger than average on the merits given the allegations that the Blackbyte ransomware group posted samples of information it acquired during the Data Breach on the dark web. Complaint ¶¶ 1, 8. Commensurate with this, the "common fund" settlement obtained for RPs and Settlement Class Members is an exemplary result for a data breach settlement, particularly a cyberattack case. Below are example orders within the Ninth Circuit

granting preliminary or final approval of common fund settlements in data breach cases arising from cyberattacks, none of which achieves the **<u>$67.50</u>** per Settlement Class Member obtained here:

- <u>$3.75 per class member</u>: *In Re PostMeds, Inc. Data Breach Litig.*, No. 23-CV-05710-HSG, 2024 WL 4894293 (N.D. Cal. Nov. 26, 2024) (granting preliminary approval) ($7.5 million fund for approximately 2 million class members)

- <u>$10.04 per class member</u>: *Peterson v. Vivendi Ticketing US LLC*, No. CV 23-7498-MWF (DFMX), 2024 WL 3915154 (C.D. Cal. June 20, 2024) (granting preliminary approval ) ($3.25 million fund for approximately 323,498 class members)

- <u>$7.14 per class member</u>: *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) (granting final approval) ($10 million fund for approximately 1.4 million class members)

- <u>$3.74 per class member</u>: *Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023) ($2.45 million fund for approximately 640,906 class members)

- <u>$50.60 per class member</u>: *In re Solara*, 2022 WL 1174102 (granting preliminary approval) ($5,060,000 fund for approximately 100,000 individuals)

In addition, the proposed settlement treats all class members equally. Each class member can make a claim for (1) Approved Claims for Credit Monitoring Services; (2) Approved Claims for Ordinary Out-of-Pocket Losses; (3) Approved Claims for Extraordinary Out-of-Pocket Losses and Attested Time; and (4) Residual Cash Payments. Approved Claims for California Statutory Payments are appropriately limited to the subclass of California residents authorized to make such

claims under California law and is within the range of statutory damages afforded by the CCPA. *See* Cal. Civ. Code § 1798.150(a)(1)(A) (providing statutory damages of between $100-$750 per violation).

**C. Approving Class Notice.**

"Class notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Solara*, 2022 WL 1174102, at *8 (quoting *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019)). "In addition, the class notice must satisfy the content requirements of Rule 23(c)(2)(B), which provides the notice must clearly and concisely state in plain, easily understood language:

> [t]he nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* (quoting Fed. R. Civ. P. 23(c)(2)(B)).

**1. Content and Method of Notice.**

The proposed notice program provides that a Short Form Notice, with an attached "tear off" claim form with prepaid postage for those who wish to make claims that do not require documentation, shall be mailed to all Settlement Class Members. *Id.* ¶ 3.2.1. The Claims Administrator shall mail a copy of the Short Form Notice via United States Postal Services ("USPS") first class mail to all Settlement

Class Members for whom Kisco can ascertain a mailing address from its records with reasonable effort. *Id.* For any Short Form Notices that are returned undeliverable, the Claims Administrator shall use reasonable efforts to identify updated mailing addresses and resend the Short Form Notice to the extent feasible. *Id.* The Claims Administrator shall email a copy of the Short Form Notice to all Settlement Class Members for whom Kisco can ascertain an email address from its records with reasonable effort. *Id.*

The Short Form Notice (i) states that a proposed settlement has been reached in a class action lawsuit arising from the Data Incident, (ii) defines the class as "all individual U.S. residents to whom Kisco sent written notification of the Data Incident," (iii) explains that the claims in the lawsuit relate to the Data Incident and identifies the relief available to Settlement Class Members, (iv) advises that "Other Options" include exclusion from the Settlement or objecting to the it, and (v) advises that Settlement Class Members who do not exclude themselves from the Settlement will give up their right to sue Kisco for the claims that the Settlement resolves. S.A. Ex. B. The deadlines to make a claim, request exclusion, and object have placeholders for this information to be filled in following preliminary approval. *Id.*

In addition to mailing the Short Form Notice to Settlement Class Members, the Claims Administrator shall also post a Long Form Notice on the Settlement Website. *Id.* ¶ 3.2.2. RPs submit that the notice program satisfies the requirements of Rule 23 and due process and should be approved.

### D. Scheduling Fairness Hearing.

For the Court's convenience, RPs propose the following dates and deadlines, including proposing that the final fairness hearing be scheduled no sooner than 150 days from the date the Court enters an order preliminarily approving the proposed settlement:

| ACTION | DATE |
|---|---|
| Defendant Provides Class Member List | Within 14 days of an order directing class notice |
| Class Notice Date / Completion of Notice Program | 30 days after entry by the Court of the Preliminary Approval Order |
| Motion for Attorneys' Fees, Expenses, and Service Awards to RPs | 14 days prior to the Objection Deadline |
| Exclusion / Opt-Out Deadline | 60 days from the Class Notice Date |
| Objection Deadline | 60 days from the Class Notice Date |
| Deadline to Submit Claims | 90 days after the Class Notice Date |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | (To be scheduled no earlier than 150 days after entry of Preliminary Approval Order) |

## CONCLUSION

For the reasons set forth set forth above, RPs request the Court enter the order proposed by the Parties directing the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing.

Date: September 3, 2026

Respectfully Submitted,

/s/ *Ryan D. Maxey*

Michael F. Ram, Esq. (SBN 104805)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913

Email: mram@forthepeople.com

Patrick A. Barthle II*
Florida Bar No. 99286
pbarthle@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Ryan D. Maxey*
**MAXEY LAW FIRM, P.A.**
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
ryan@maxeyfirm.com

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Dr., PH Suite
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: jnelson@milberg.com

* *admitted pro hac vice*

*Attorneys for Representative Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ *Ryan D. Maxey*